## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

HENRY RODRÍGUEZ,

    Plaintiff,

      v.

DEPARTMENT OF THE ARMY; MARK ESPER, SECRETARY OF THE ARMY,

    Defendant.

CIVIL NO.: 16-1000 (MEL)

## OPINION AND ORDER

Henry Rodríguez ("Plaintiff") has filed a third amended complaint against the Department of the Army ("Defendant" or "Army") alleging violations of his employment rights under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 et seq.  ECF No. 83, at 1. Pending before the court is Defendant's motion for summary judgment.  ECF No. 48.

## I.    STANDARD OF REVIEW

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted).  Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the

movant presents a properly focused motion "averring 'an absence of evidence to support the

nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of

at least one fact issue which is both 'genuine' and 'material.'"  Griggs-Ryan v. Smith, 904 F.2d

112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).

In assessing a motion for summary judgment, the court "must view the entire record in the

light most hospitable to the party opposing summary judgment, indulging all reasonable inferences

in that party's favor."  Id.  There is "no room for credibility determinations, no room for the

measured weighing of conflicting evidence such as the trial process entails, [and] no room for the

judge to superimpose his own ideas of probability and likelihood."  Greenburg v. P. R. Mar.

Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  The court may, however, safely ignore

"conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v.

R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II.    UNCONTESTED MATERIAL FACTS

Plaintiff is a former civilian Army police officer who worked at Fort Buchanan from

September 2004 until December 20, 2013.  ECF Nos. 50, at 1, ¶ 1; 59, at 1, ¶ 1.

On October 23, 2012, due to a condition not specified by the parties, a physician

recommended to Plaintiff's supervisors that he avoid lifting over 50 pounds, pushing, and pulling.[1]

ECF Nos. 50, at 3, ¶ 8; 59, at 2, ¶ 8.  On November 17, 2012, Plaintiff's supervisor put him to

work on the shift starting at midnight at the Monitoring Station.  ECF Nos. 50, at 3, ¶ 10; 59, at 2,

¶ 10.

---

[1] Defendant cites Plaintiff's second amended complaint to support the contention that Plaintiff suffers from "chronic back pain."  ECF No. 50, at 3, ¶ 7.  Plaintiff disputes this by noting that the complaint does not support this assertion. ECF No. 59, at 2, ¶ 7.  However, Plaintiff does not specify what his alleged disability is in either the third amended complaint or in his response to Defendant's proposed statement of facts.

Plaintiff worked at the Monitoring Station until January 22, 2013. During that time, Plaintiff performed all his duties with no health complaints. ECF Nos. 50, at 3, ¶ 11; 59, at 3, ¶ 11. On January 22, 2013, Plaintiff's doctor recommended another 30 days on light duty, with no running, jumping, pushups, sit-ups, lifting, or pulling above 50 pounds for more than two hours. Plaintiff was to avoid prolonged standing and be allowed 5-10-minute breaks every two hours. ECF Nos. 50, at 3, ¶ 12; 59, at 3, ¶ 12. The recommendation was delivered to Plaintiff's supervisors, who sent him home on approved medical leave the same day because the Monitoring Station "d[id] not require [Plaintiff's] service" anymore. ECF Nos. 50, at 4, ¶ 13; 59, at 3, ¶ 13.

On January 24, 2013, Plaintiff initiated a pre-complaint with the Army Equal Employment Opportunity (EEO) Office, alleging discrimination. Specifically, he alleged that his supervisors delayed implementing a request for a reasonable accommodation made on October 23, 2012 for three weeks and subsequently ended the accommodation in January 2013, forcing him to take sick leave. ECF Nos. 50, at 4, ¶ 14; 59, at 3, ¶ 14.

On March 1, 2013, Plaintiff filed a formal complaint in Claim 0330 at the EEO, alleging discrimination and adding that he had been threatened with disciplinary action if he did not report to the firing range for a temporary assignment. ECF Nos. 50, at 4, ¶ 15; 59, at 4, ¶ 15. The Army EEO Office dismissed the claim for delayed accommodation because Plaintiff made initial contact with the EEO Office after the 45-day deadline had expired. Plaintiff's claim that he had been threatened with discipline was also dismissed because he "was never actually disciplined and therefore did not suffer an adverse employment action." ECF Nos. 50, at 4, ¶ 16; 59, at 4, ¶ 16.

On April 22, 2013, Plaintiff was detailed to work at the I.D. Card section at the Directorate of Human Resources (DHR). This was a temporary detail not to exceed 120 days. ECF Nos. 50, at 5, ¶ 17; 59, at 4, ¶ 17.

Plaintiff worked at the I.D. Card section at DHR until September 3, 2013, when he was reassigned to work at the Monitoring Station.[2] ECF Nos. 50, at 5, ¶ 18; 59, at 4, ¶ 18. On September 4, 2013, he began training at the Monitoring Station, which was terminated the next day. For 10 days, Plaintiff went to work but did not perform any job-related duties. Then, on September 13, 2013, he was sent home. ECF No. 59, at 5, ¶ 18.

On September 16, 2013, Plaintiff initiated another EEO pre-complaint (Claim 03365), alleging that he was subject to discrimination based on disability and retaliation. ECF Nos. 50, at 5, ¶ 20; 59, at 5, ¶ 20. Plaintiff subsequently was given 464 hours of administrative leave, beginning on September 30, 2013. ECF Nos. 50, at 5, ¶ 19; 59, at 5, ¶ 19.

On October 16, 2013, an individual by the name of Robert Nelson issued a Notice of Proposed Separation Action that was delivered to Plaintiff on October 17, 2013.[3] ECF Nos. 50, at 5, ¶ 21; 59, at 5, ¶ 21. The Notice of Proposed Separation Action stated that Plaintiff's "identified physical limitations as validated by medical authorities and other related factors prevent[ed] [him] . . . from performing one or more of [his] . . . essential duties to include [his] . . . inability to qualify or use or carry a firearm."[4] ECF Nos. 50, at 6, ¶ 25; 59, at 9, ¶ 25. According to medical reports prepared by Dr. Janelle Torres-Giovannetti on September 10, 2013 and October 1, 2013, Plaintiff was unfit for duty. ECF Nos. 50, at 6, ¶ 22; 59, at 6, ¶ 22. The medical reports noted that in

---

[2] Citing to the sworn statement of Ramon Peluyera, a supervisor in the I.D. Card section, Plaintiff clarified that Robert Nelson told Mr. Peluyera that there was a vacant position at the Monitoring Station and that Plaintiff would be accommodated at the Monitoring Station. ECF No. 59, at 5, ¶ 18. For more information on the identity of Mr. Nelson, see note 3.

[3] Plaintiff alleges in the third amended complaint that Mr. Nelson is a "Security Director" and one of Plaintiff's supervisors. ECF No. 83, at 4. However, in his proposed statement of facts, Plaintiff does not clarify who Mr. Nelson is or what his relationship is with Defendant. Likewise, Defendant never suggests that Mr. Nelson is *not* Plaintiff's supervisor.

[4] Although it is disputed whether Plaintiff could perform his essential duties (ECF No. 59, at 9, ¶ 25), it is undisputed that the Notice of Proposed Separation Action states this.

addition to his physical ailments, Plaintiff was undergoing treatment with "medication that may cause drowsiness and decrease alertness."[5] ECF Nos. 50, at 6, ¶ 24; 59, at 9, ¶ 24.

In an effort to find him another position, Plaintiff was considered for Security Assistant, GS-0086-5, but was found not to meet the physical requirements of the position. A search was also made for other vacant positions at or below the GS-06 pay grade. While Defendant claims that there were none (ECF No. 50, at 7, ¶ 27), Plaintiff claims that there were two open positions at the Monitoring Station which were filled after he was terminated and that he was offered a job at the I.D. Card section by a supervisor in the I.D. Card section. ECF No. 59, at 10, ¶ 27.

Prior to his removal, Plaintiff was afforded ten calendar days to respond to the proposed termination. ECF No. 50-12, at 307. In his October 21, 2013 response, Plaintiff's attorney neither raised the issue of the authenticity of the medical reports nor asserted that Plaintiff was able to perform his job as a police officer. ECF Nos. 50, at 7, ¶ 28; 59, at 10, ¶ 28. Instead, Plaintiff's attorney focused on various positions that he alleged Plaintiff could be reassigned to. ECF No. 50-19.

Plaintiff was fired on December 16, 2013. ECF No. 59, at 5, ¶ 19. According to Colonel Kathleen Porter, the official who made the decision to remove Plaintiff, he was terminated because of his "permanent inability to perform in [his] official position." ECF Nos. 50, at 7, ¶ 26; 59, at 10, ¶ 26.[6]

On January 28, 2014, Plaintiff initiated a pre-complaint with the EEO office. ECF Nos. 50, at 7–8, ¶ 29; 59, at 11, ¶ 29. Plaintiff filed his formal complaint on August 1, 2014 (Claim

---

[5] Although it is disputed whether Plaintiff's medication had this effect on him (ECF No. 59, at 9, ¶ 24), it is undisputed that the medical reports indicated that taking the medication could cause drowsiness.
[6] Although Plaintiff claims that Mr. Nelson was the person who authorized the separation, it is undisputed that Colonel Kathleen Porter was the person who signed and issued the termination letter. In other words, Mr. Nelson authorized the Notice of Proposed Separation Action, but Col. Porter was the ultimate decisionmaker responsible for firing Plaintiff. It is also undisputed that Mr. Nelson had knowledge of Plaintiff's EEO activity. ECF No. 59, at 10, ¶ 26.

1291), alleging that he was removed from his position based on his disability and in retaliation for his prior protected conduct. ECF Nos. 50, at 8, ¶ 30; 59, at 11, ¶ 30. The EEO Office dismissed one of Plaintiff's claims because it was untimely and because it was part of his previous EEO complaint. ECF Nos. 50, at 8, ¶ 31; 59, at 11, ¶ 31.

## III. DEFENDANT'S ARGUMENTS

Plaintiff raises two causes of action in his third amended complaint. First, Plaintiff alleges that Defendant failed to provide him with reasonable accommodation for his disability. ECF No. 83, at 5. Second, Plaintiff alleges that Defendant retaliated against him. Id. at 6. A discussion of each cause of action follows.

### A. Plaintiff's Retaliation Claim.

#### 1. Plaintiff's Failure to Administratively Exhaust his Title VII Retaliation Claim.

Defendant contends that Plaintiff did not raise a claim of retaliation based on activity protected by Title VII in his administrative complaints.[7] Specifically, in his EEO complaints, Plaintiff never alleged that he was retaliated against because of his "race, color, religion, sex, or national origin." Vance v. Ball State Univ., 570 U.S. 421, 426 (2013) (quoting 42 U.S.C. § 2000e–2(a)(1)). This matters, Defendant argues, because in his second amended complaint, Plaintiff alleged that Defendant retaliated against him *in violation of Title VII*. Thus, Plaintiff failed to administratively exhaust his Title VII retaliation claim.

Had Plaintiff never amended the complaint he filed before this court, there would have been a discrepancy between his administrative complaints and his second amended complaint. However, on September 28, 2018, Plaintiff filed a third amended complaint in which he replaced citations to Title VII with citations to the Rehabilitation Act, which provides that "[n]o otherwise

---

[7] Defendant's motion for summary judgment was filed before the third amended complaint was filed.

qualified individual with a disability . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." 29 U.S.C. § 794 (emphasis added). Thus, the court finds Defendant's argument to be moot because the assertions in Plaintiff's administrative complaints are aligned with the allegations in his third amended complaint.

### 2. Plaintiff's Inability to Establish a Prima Facie Case of Retaliation.

To make out a prima facie case of retaliation, a plaintiff must show that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).

### a. Plaintiff's Inability to Prove Protected Conduct.

Defendant contends that activity Plaintiff engaged in prior to contacting the EEO cannot be deemed protected conduct.[8] On December 14, 2012, Plaintiff initiated a pre-complaint with the Army EEO office. On January 24, 2013, Plaintiff initiated another EEO pre-complaint, alleging that his supervisors delayed implementing a request for a reasonable accommodation made on October 23, 2012 for three weeks and subsequently ended the accommodation in January 2013, forcing him to take sick leave. ECF Nos. 50, at 4, ¶ 14; 59, at 3, ¶ 14. This is relevant, Defendant argues, because in the "factual statements" section of the amended joint proposed pretrial order, Plaintiff specifies that "[t]he sole reason for his . . . employment termination was his filing of EEO complaints against his superiors." ECF No. 74, at 4.[9] According to the amended joint proposed

---

[8] It is undisputed that on January 24, 2013, Plaintiff initiated a pre-complaint with the EEO. ECF Nos. 50, at 4, ¶ 14; 59, at 3, ¶ 14. However, Plaintiff alleges that he also initiated a pre-complaint with the EEO on December 14, 2012. ECF No. 59, at 3, ¶ 14. While the date of Plaintiff's first contact with the EEO is in dispute, it is not material. Thus, for purposes of this motion, the court will assume that Plaintiff initiated an EEO pre-complaint on December 14, 2012.
[9] Plaintiff's legal theory does not appear to have changed from the first joint proposed pretrial order to the second; the former states in the "applicable law" section that Plaintiff "filed EEO complaints; his employment was terminated, and the reason for [his] termination was the . . . filing of EEO complaint[s]." ECF No. 36, at 9.

pretrial order, the only protected conduct in which Plaintiff engaged was the filing of complaints before the EEO, and Plaintiff did not even contact the EEO until December 14, 2012. Thus, the argument goes, all activity Plaintiff engaged in prior to December 14, 2012 cannot be deemed protected conduct, and summary judgment on Plaintiff's retaliation claim is warranted to the extent that it rests on that activity.

The purpose of a final pretrial order is "to control the subsequent course of the action." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 774 (1st Cir. 2010) (quoting Correa v. Hosp. San Francisco, 69 F.3d 1184, 1195 (1st Cir.1995)). See also Shaub v. Newton Wall Co/UCAC, 153 F. App'x 461, 464 (10th Cir. 2005) (quoting Hullman v. Bd. of Trustees of Pratt Cmty. Coll., 950 F.2d 665, 668 (10th Cir.1991)) ("The pretrial order, which recites the action taken at the conference, 'measures the dimensions of the lawsuit.'"); Hung Duc Bui v. IBP, Inc., 201 F.R.D. 509, 512 (D. Kan. 2001) (quoting Trujillo v. Uniroyal Corp., 608 F.2d 815, 817 (10th Cir. 1979)) (The pretrial order "represents a complete statement of all the contentions of the parties."). Therefore, "issues not included in the final pretrial order are generally waived." Id. See also Salemi v. Colorado Pub. Employees' Ret. Ass'n, No. 17-1085, 2018 WL 3954221, at *21 (10th Cir. 2018) ("[T]he final pretrial order supersedes the complaint as to the issues to be presented at trial."); FN Herstal SA v. Clyde Armory Inc., 838 F.3d 1071, 1089 (11th Cir. 2016) (quoting State Treasurer of Mich. v. Barry, 168 F.3d 8, 9–10 (11th Cir. 1999)) ("'[A] pretrial order supersedes the pleadings,' thereby 'eliminating any claims not preserved in the pretrial order.'"); Klingenberg v. Vulcan Ladder USA, LLC, No. 15-CV-4012-KEM, 2018 WL 1248007, at *8 (N.D. Iowa 2018) (quoting Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 498 (8th Cir. 2010)) ("And because 'the final pretrial order supersedes the pleadings,' as a general rule, an affirmative defense omitted from the final pretrial order is forfeited.") (internal citations omitted).

Here, the only protected conduct Plaintiff identifies in the amended joint proposed pretrial order is his filing of EEO complaints. ECF No. 74, at 4. Therefore, the motion for summary judgment is granted on Plaintiff's retaliation claim to the extent that it rests on activity other than the filing of EEO complaints. According to the summary judgment record, the first EEO complaint was filed on March 1, 2013. The pre-complaint contacts with the EEO were established on December 14, 2012. Under these circumstances, the court will grant summary judgment on Plaintiff's retaliation claim to the extent that it rests on activity which occurred before December 14, 2012.

### b. Plaintiff's Inability to Prove He Suffered an Adverse Action.

Defendant contends that Plaintiff cannot show that he suffered an adverse action because the Army acted in compliance with the Rehabilitation Act in considering his requests for accommodation. To assert a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must establish: (1) that he suffers from a "disability" within the meaning of the statute; (2) that he was able to perform the essential functions of his job, either with or without a reasonable accommodation; and (3) that despite his employer's knowledge of his disability, the employer did not offer a reasonable accommodation. Calero-Cerezo, 355 F.3d at 20.

To establish an adverse action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse," which means that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

In his response in opposition to Defendant's motion for summary judgment, Plaintiff argues that he has "suffered plenty of adverse employment actions." ECF No. 61, at 12. He points

9

to the alleged delay in implementing his request for a reasonable accommodation in October 2012, the end of the accommodation in January 2013, the Army's decision to send him to the I.D. Card section in April 2013, the stripping of his duties at the Monitoring Station in September 2013, and his termination. Id. at 12–13. There is no doubt that being terminated constitutes an adverse action. Negrón-Marty v. Wal-Mart Puerto Rico, Inc., 862 F. Supp. 2d 48, 70 (D.P.R. 2012) ("To round out the *prima facie* analysis of the [retaliation] claim, I return to the first and second elements of the case. Since plaintiffs' claim is based on the undisputed fact that Negrón was terminated, I consider whether Negrón made a protected request for accommodation."). With regard to the other allegedly adverse actions Plaintiff identifies in his response in opposition, it is of note that Plaintiff states in the "factual statements" section of the amended joint proposed pretrial order that "[t]he sole reason for his . . . *employment termination* was his filing of EEO complaints against his superiors." ECF No. 74, at 4 (emphasis added). The only adverse action Plaintiff identifies in the amended joint proposed pretrial order is his termination. Thus, summary judgment is granted on Plaintiff's retaliation claim to the extent that it rests on allegedly adverse actions other than Plaintiff's termination.[10] See Rodríguez-García, 610 F.3d at 774.

### c. Plaintiff's Inability to Prove a Causal Connection.

Defendant contends that Plaintiff cannot prove a causal connection between his protected conduct and the adverse action. Specifically, Defendant argues that Plaintiff cannot prove that the decisionmaker behind his termination, Col. Porter, had a retaliatory motive. In response, Plaintiff argues 1) that he can establish a causal connection through the temporal proximity between his

---

[10] On September 16, 2013, Plaintiff initiated an EEO pre-complaint (Claim 03365), alleging that he was subject to discrimination based on disability and retaliation when the Army failed to accommodate him on two separate occasions: September 3, 2013 and April 2013. ECF Nos. 50, at 5, ¶ 20; 59, at 5, ¶ 20. Defendant contends that any incident occurring in April 2013 was not reported soon enough to the EEO office at Fort Buchanan. Thus, Defendant argues, summary judgment on Plaintiff's retaliation claim is warranted to the extent that it rests on any incident occurring in April 2013. In light of the court's ruling, Defendant's argument is moot because any incident that occurred in April 2013 constitutes an allegedly adverse action other than Plaintiff's termination.

protected conduct and his termination, 2) that Mr. Nelson, who authorized the Notice of Proposed Separation Action, had knowledge of Plaintiff's EEO activity, and 3) that he was never examined by Dr. Torres, rendering the medical reports on which the Notice of Proposed Separation Action was allegedly based fraudulent.

Turning to Plaintiff's first argument, it is true that "[t]emporal proximity can create an inference of causation" in a retaliation case. Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Calero-Cerezo, 355 F.3d at 25 (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). Accordingly, "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity" and a one-month period has been held sufficient. Id.

Here, Plaintiff initiated EEO pre-complaints on December 14, 2012, January 24, 2013, and September 16, 2013. He also filed a formal complaint on March 1, 2013. Mr. Nelson issued the Notice of Proposed Separation Action on October 16, 2013. First, Plaintiff cannot prove a causal connection between his filing of the formal complaint on March 1, 2013 and the issuance of the Notice of Proposed Separation Action over four months later; thus, summary judgment on his retaliation claim to the extent that it rests on that activity is granted. Second, Plaintiff did not mention in the amended joint proposed pretrial order that he was terminated because of his filing of EEO complaints *and pre-complaints*. See ECF No. 74, at 4. Even if Plaintiff had made this allegation, he also could not prove a causal connection between his initiation of the EEO pre-complaints on December 14, 2012 and January 24, 2013 and the issuance of the Notice of Proposed

11

Separation Action over four months later. Thus, remaining is Plaintiff's initiation of the EEO pre-complaint on September 16, 2013. Assuming that Plaintiff did mention this activity in the amended joint proposed pretrial order, the temporal proximity between the initiation of the EEO pre-complaint and the issuance of the Notice of Proposed Separation Action one month later gives rise to an inference of causation. The analysis does not end here, however, because "to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." Pomales, 447 F.3d at 85.

It is undisputed that Col. Porter, the official who made the decision to remove Plaintiff, was not aware of any of Plaintiff's EEO complaints. ECF Nos. 50, at 7, ¶ 26; 59, at 10, ¶ 26. Under these circumstances, Plaintiff can only sustain his retaliation claim by proceeding under a "cat's paw" theory. The cat's paw theory is employed when one "seeks to hold his employer liable for the animus of a supervisor" who influenced, but did not make, "the ultimate employment decision." Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015) (quoting Staub v. Proctor Hospital, 562 U.S. 411 (2011)).

The First Circuit has not decided the issue of whether the cat's paw theory requires the reporting of inaccurate or misleading information. See id. at 71 ("According to Ameen, *Staub* does not require the reporting of inaccurate or misleading information; instead, all that is needed is an act by an employee (i.e. the reporting of even accurate information) motivated by animus that is intended to cause, and indeed does cause, an adverse employment action. However, we have no need to parse these two interpretations[.]"). While the Sixth Circuit and the Seventh Circuit have applied the cat's paw theory to retaliation claims under the Americans with Disabilities Act in dicta, neither Plaintiff nor Defendant explicitly invoke the cat's paw theory or cite to authority indicating that it is applicable to a retaliation claim under the Rehabilitation Act. See Gjokaj v.

United States Steel Corp., 700 F. App'x 494, 502–05 (6th Cir. 2017) ("Gjokaj's cat's paw theory is a non-sequitur because he has presented no evidence that Lieb harbored any bias against him."); Hoppe v. Lewis Univ., 692 F.3d 833, 841–43 (7th Cir. 2012) ("Hoppe has not advanced a cat's paw theory of liability . . . .  Even if she had, there is no evidence that Ayers persuaded Brogan to remove Hoppe from the aviation ethics course.").  However, even if it is assumed arguendo that the cat's paw theory may be applied to a retaliation claim under the Rehabilitation Act, Plaintiff still cannot prevail.

The Notice of Proposed Separation Action indicates that it was based on one or more medical reports, which found Plaintiff unfit for duty.  Further, the Letter of Decision issued by Col. Porter states that Defendant "looked to see if there were any other vacant positions, at or below, the GS-06 paygrade, for which [Plaintiff] would qualify but regrettably there [we]re none." ECF No. 50-17, at 1.  Plaintiff claims the medical reports to be fraudulent because he was never examined by Dr. Torres, the author of the reports.  Plaintiff also claims 1) that a March 15, 2013 medical report found him fit for duty, 2) that there were two open positions at the Monitoring Station which were filled after he was terminated, and 3) that he was offered a job at the I.D. Card section by a supervisor in the I.D. Card section.  Thus, under the cat's paw theory, Plaintiff could pursue one of three possible case theories.  First, Plaintiff could argue that Mr. Nelson influenced Col. Porter by convincing Dr. Torres to forge the medical reports.  Second, Plaintiff could argue that Mr. Nelson influenced Col. Porter by withholding evidence of the March 15, 2013 medical report.  Third, Plaintiff could argue that Mr. Nelson influenced Col. Porter by withholding evidence of the two open positions at the Monitoring Station and of the job offer by the supervisor in the I.D. Card section.

On summary judgment, for issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). Should this case proceed to trial, Plaintiff will have the burden of proving one of the three possible case theories described above. However, Plaintiff has not pointed to any evidence in the record demonstrating the existence of an authentic dispute over whether his termination was causally connected to his protected conduct.

Turning to Plaintiff's first possible case theory, numerous circuit courts have held that under the cat's paw theory, "the causal link between the protected conduct and termination is broken where the [decision-maker] ... conducts an 'independent investigation' in the course of reaching his or her decision." Ameen v. Merck & Co., 226 F. App'x 363, 376–77 (5th Cir. 2007) (quoting Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir.2001)). See also E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 485 (10th Cir. 2006); Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999); Poland v. Chertoff, 494 F.3d 1174, 1183 (9th Cir. 2007); Goodsite v. Norfolk S. Ry. Co., 573 F. App'x 572, 586 (6th Cir. 2014); Richardson v. Sugg, 448 F.3d 1046, 1060 (8th Cir. 2006); Brewer v. Bd. of Trustees of Univ. of IL, 479 F.3d 908, 919 (7th Cir. 2007). "An important factor is whether during the course of the investigation, the decision maker allows the claimant to give his version of events." Natay v. Murray Sch. Dist, 119 F. App'x 259, 262 (10th Cir. 2005). Here, it is undisputed that Plaintiff was afforded an opportunity to respond to the proposed removal. Moreover, it is also undisputed that in his October 21, 2013 response, Plaintiff's attorney did not raise the issue of the authenticity of the medical reports. Col. Porter should not have been expected to investigate the possibility that Mr. Nelson

14

convinced Dr. Torres to forge the medical reports when Plaintiff never claimed the fraudulence of the reports. See Brewer, 479 F.3d at 919. The same problem plagues Plaintiff's second possible case theory. Plaintiff has cited to no evidence in the record indicating that he or his lawyer ever brought the March 15, 2013 medical report to Col. Porter's attention.

Moving on to Plaintiff's third possible case theory, the individual in charge of conducting the search for vacant positions was María Morales, not Mr. Nelson, and Plaintiff has neither alleged that Ms. Morales knew of Plaintiff's filing of EEO complaints nor cited to any evidence of how Mr. Nelson influenced Ms. Morales or interacted with her. ECF No. 66-3. Further, one of the positions at the Monitoring Station, that of Security Assistant, was offered to Plaintiff by Mr. Nelson prior to the issuance of the Notice of Proposed Separation Action. See ECF No. 66-2. However, Plaintiff rejected the offer on September 3, 2013 in order to preserve "the purity" of his retaliation claim. Id. Plaintiff cannot claim that Mr. Nelson influenced Col. Porter by withholding evidence of an open position where Plaintiff had already been offered that position and turned it down. Lastly, the record evidence Plaintiff cites to support his contention that he was offered a job at the I.D. Card section by a supervisor in the I.D. Card section does not in fact support this contention. Plaintiff's unsworn statement under penalty of perjury merely states that a position at the Welcome Center was offered to him, but it does not clarify whether the Welcome Center is part of the I.D. Card section. ECF No. 59-1, at 3.

In sum, there is no viable path for the cat's paw theory that Plaintiff can pursue at trial and that would allow him to demonstrate that his termination was causally connected to his protected conduct. Thus, summary judgment on Plaintiff's retaliation claim is granted.

**B. Plaintiff's Reasonable Accommodation Claim.**

Defendant contends that the Army acted in compliance with the Rehabilitation Act in considering Plaintiff's requests for accommodation. As described above, Defendant incorrectly raises this argument in the context of Plaintiff's retaliation claim. Defendant's argument is relevant to the issue of whether Plaintiff can assert a claim for failure to accommodate. However, the court finds Defendant's argument to be moot. Nowhere in the amended joint proposed pretrial order does Plaintiff raise a reasonable accommodation claim. Thus, to the extent that Plaintiff's third amended complaint can be construed as raising a reasonable accommodation claim, summary judgment as to that claim is granted. See Rodríguez-García, 610 F.3d at 774.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 48) is GRANTED. The complaint is DISMISSED WITH PREJUDICE. The trial is vacated.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 15th day of November, 2018.

s/Marcos E. López
U.S. Magistrate Judge